```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT CHARLESTON

STEVEN MCGOWAN and
JUDITH MCGOWAN,

        Plaintiffs,

v.                                    Civil Action No. 2:12-cv-4927

NISSAN NORTH AMERICA, INC.,

        Defendant.
```

MEMORANDUM OPINION AND ORDER

Pending is the motion by plaintiffs Steve and Judith McGowan ("the McGowans") to remand for lack of subject matter jurisdiction, filed September 4, 2012. Finding that the defendant Nissan North America, Inc. ("Nissan") has not met its burden in proving that the amount in controversy exceeds the jurisdictional amount, the court grants the McGowans' motion and remands the case.

I. Background

This case arises from the McGowans' purchase of a new, but allegedly defective, 2010 Nissan Murano from the Moses Automotive Network in Huntington, West Virginia on June 9, 2012. Compl. ¶ 3. Nissan manufactures and sells the Murano, and Moses Automotive is an authorized dealer of Nissan automobiles. Id. ¶ 3. The McGowans are residents of Kanawha County, West Virginia.

Id. ¶ 2.  Nissan is a foreign corporation, organized under the laws of California and with a principal place of business in California.  Not. Remov. ¶ 2.

The McGowans bought the Murano for "less than $40,000" and also purchased an express extended warranty, which covered the Murano for five years or 100,000 miles.  Compl. ¶ 5-6.  This supplemented the manufacturer's six-year power-train warranty.  Id.  The McGowans assert that the Murano has not complied with the warranties.  Id. ¶ 7.  They reported defects to Nissan and its authorized dealers on "numerous occasions" and provided opportunities to cure the defects.  Id. ¶ 8.  Nissan and its authorized dealers were unable to cure the defects after a reasonable number of attempts, and "the nonconformity has resulted in substantial impairment to the use or market value" of the vehicle.  Id. ¶ 9-10.  The McGowans specify that Nissan and its authorized dealers attempted to repair the drive-train at least eight times, preventing the McGowans' use of the Murano "for significant periods of time."  Id. ¶ 11.  Nissan has refused to replace the vehicle.  Id. ¶ 12.

The McGowans commenced this action in the Circuit Court of Kanawha County, West Virginia on July 27, 2012.  Their single-count complaint alleges a violation of West Virginia's "Lemon

Law," as set forth in sections 46A-6A-1 to 9 of the West Virginia Consumer Credit and Protection Act ("WVCCPA").  Id. ¶ 1.  In relief, the McGowans seek "a refund of the purchase price, including, but not limited to, sales tax, license and registration fees, and other reasonable expenses incurred for the purchase of . . . , or damages for the diminished value of" the Murano.  Id. ¶ A.  They additionally seek "[d]amages for the loss of use, annoyance or inconvenience . . . including . . . reasonable expenses incurred for replacement transportation."  Id. ¶ B.  Finally, the McGowans ask for "[r]easonable attorney fees" and "[a]ny other relief the Court deems appropriate."  Id. ¶ C-D.

On August 30, 2012, Nissan removed, invoking the court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1).  On September 4, 2012, the McGowans moved to remand on the ground that Nissan has not met its burden of proof in establishing the amount in controversy.

## II. The Governing Standard

"Except as federal law may otherwise provide, when a defendant removes a state civil action to federal district court, federal removal jurisdiction exists if the action is one 'of which the district courts of the United States have original jurisdiction.'"  In re Blackwater Sec. Consulting, LLC, 460 F.3d

576, 583 (4th Cir. 2006) (quoting 28 U.S.C. § 1441(a)). Because removal jurisdiction implicates significant federalism concerns, it is strictly construed, and if federal jurisdiction is doubtful, the case must be remanded. See Palisades Collections LLC v. AT&T Mobility LLC, 552 F.3d 327, 336 (4th Cir. 2008); Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). The party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey, 29 F.3d at 151.

Pursuant to 28 U.S.C. § 1332(a)(1) diversity jurisdiction, district courts possess original jurisdiction over all actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." If a diversity jurisdiction case is initially filed in federal court, the court will consider the amount in controversy requirement satisfied unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). When a defendant removes a case with unspecified damages from state court, however, the defendant "must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount." Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 935 (S.D. W. Va. 1996); see also Bartnikowski v. NVR, Inc., 307 F. App'x. 730,

734 n.7 (4th Cir. 2009) (applying a preponderance standard that "sister circuits have explicitly adopted," but reserving the right to consider "whether a more stringent standard would be appropriate").

The court considers the entire record and makes an independent evaluation of whether the amount in controversy has been satisfied. Weddington v. Ford Motor Credit Co., 59 F. Supp. 2d 578, 584 (S.D. W. Va. 1999). The court must conduct that evaluation "on the basis of the record existing at the time the petition for removal is filed." Landmark Corp., 945 F. Supp at 936. Important factors include the type and extent of the plaintiff's injuries and the possible damages recoverable from those injuries. McCoy v. Norfolk S. Ry. Co., 858 F. Supp. 2d 639, 649 (S.D. W.Va. 2012).

### III. Discussion

There is no dispute with respect to diversity of citizenship among the parties. The lone issue is whether Nissan has shown by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.

A. Stipulation

In its notice of removal and its opposition to the McGowans' motion to remand, Nissan highlights the McGowans' unwillingness to stipulate that the amount in controversy is less than $75,000.[1]  Nissan asserts not only that the absence of a stipulation is evidence that the amount in controversy exceeds $75,000, but also that a stipulation is required for remand pursuant to McCoy v. Erie Insurance Company, 147 F. Supp. 2d 481, 485 (S.D. W. Va. 2001) (concluding that "[t]he better rule requires a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery.").  Def.'s Resp. Opp'n. Mot. Remand 5-6.  While McCoy undertakes to specify a course that a plaintiff may follow in an effort to avoid removal, failure to do so does not serve to forfeit a plaintiff's right to remand.  Consequently, the burden remains on the defendant here to demonstrate by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount.

---

[1] In their reply brief, the McGowans offer to execute a stipulation that the "value of the revocation . . . plus any costs and fees properly countable toward the amount in controversy shall be limited to $75,000."  Pl.'s Reply Supp. Mot. Remand 2.  This assertion by the McGowans is somewhat ambiguous in that it does not include damages for annoyance and inconvenience and, while referring to "costs and fees," fails to specify that potential attorney fees are included.  In any event, the burden is on the removing defendant to establish the jurisdictional amount.

**B. Damages**

Damages in this case arise from the requested revocation, the cost of repairs, the McGowans' annoyance and inconvenience, and loss of use. In both its notice of removal and its opposition to the McGowans' motion to remand, Nissan focuses on the absence of a stipulation and the potential attorney fees, not the anticipated damages. Nevertheless, Nissan seems to suggest that a refund of the purchase price plus other damages permitted under the Lemon Law would necessarily reach a figure in excess of, or at least close to, $40,000. Not. Remov. ¶ 12, 17.

Regarding the revocation, the McGowans assert that the "less than $40,000" purchase price of the Murano is not the proper measure of damages; instead, they argue, for purposes of remand, that any refund of the purchase price must be offset by the value of the returned defective vehicle. Pl.'s Mot. Remand 8. The McGowans' appear to state the correct approach. See <u>Gardynski-Leschuck v. Ford Motor Co.</u>, 142 F.3d 955, 957 (7th Cir. 1998) ("[T]he right base [for the amount in controversy] is . . . the price of a new car less the value of the used vehicle returned to Ford . . . less the value of the use . . . , rather than the price of a new car plus the cost of securing transportation in some other way . . . .").

7

Nissan has failed to introduce evidence that other associated damages contribute significantly to the amount in controversy. Nissan's filings are silent as to the cost of repairs. Because the McGowans' extended warranty was in effect during all material times, it is not clear to the court whether any repairs led to out-of-pocket costs. The record is equally undeveloped as to the likely value of the McGowans' claim for annoyance and inconvenience, and loss of use. Nissan provides no evidence of these damages, and the McGowans state only that the drive-train was repaired at least eight times and that the vehicle remained out of service for significant periods. Accordingly, based on the sparse record before it, the court finds that the McGowans' revocation and the other attendant damages combine to equal no more than $40,000.

C. Attorney Fees

The bulk of Nissan's argument for removal hinges on attorney fees. When a right to attorney fees is provided by contract or state statute, a court may consider attorney fees as part of the amount in controversy. See Wall v. Fruehauf Trailer Services, Inc., 123 F. App'x. 572, 577 (4th Cir. 2005) (citing Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933)). The relevant state statute in this case provides that "[i]n any

claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct . . . , the court may award all or a portion of the costs of litigation, including reasonable attorney fees." W. Va. Code § 46A-5-104.  The court, therefore, may consider attorney fees that the McGowans could recover for illegal, fraudulent or unconscionable conduct, if successful in their litigation, as part of the amount in controversy.

Nissan's assertions regarding attorney fees, nonetheless, are too speculative to establish the jurisdictional amount by a preponderance of the evidence.  Nissan cites three unreported West Virginia state circuit court cases in which the attorney fees alone surpassed the jurisdictional amount, despite comparatively low actual damages.  Def.'s Resp. Opp'n. Mot. Remand 7-8.  While "the amounts awarded in other similar cases" may guide the court's calculation of likely attorney fees, Campbell v. Restaurants First/Neighborhood Restaurant, Inc., 303 F. Supp. 2d 797, 798-99 (S.D. W. Va. 2004) (quoting McCoy, 147 F. Supp. 2d at 489), Nissan has not sufficiently established the similarity between the cases it cites and the present case.  As the McGowans point out, the single count in their complaint and Mr. McGowan's pro se representation of himself while acting as counsel for his wife raise questions as to the aptness of Nissan's comparisons.  Pl.'s Mot. Remand 10-11.  Moreover, Nissan has made no showing

that any particular aspects of this case are likely to result in significant litigation costs. The mere possibility of high attorney fees is not enough to carry the defendant's burden. A conclusion otherwise would be tantamount to a <u>per se</u> rule that Lemon Law claims satisfy the jurisdictional amount.

This court has used $25,000 as a reasonable preliminary estimate of attorney fees in WVCCPA cases. <u>Maxwell v. Wells Fargo Bank, N.A.</u>, 2009 WL 3293871, at *4 n.7 (S.D. W. Va. October 09, 2009) ("[I]n two rather recent cases involving WVCCPA violations, the court held that plaintiffs' attorneys fees could reasonably reach up to $25,000."). While Nissan has presented no evidence that warrants increasing that estimate, the single-count, partially <u>pro se</u> nature of the case would warrant a decrease.[2] The court, thus, concludes that $25,000 is more than adequate as a potential attorney fee estimate for the present case.

---

[2] In <u>Kay v. Ehrler</u>, the United States Supreme Court held, in the context of § 1988 of the Civil Rights Act, that a self-represented attorney-plaintiff should be treated like a <u>pro se</u> litigant and therefore not be entitled to attorney fees. 499 U.S. 432, 437-38 (1995). This circuit has applied <u>Kay</u> in other contexts to effectuate <u>Kay</u>'s purpose of "encouraging independent representation by prohibiting statutory awards to pro se attorney-plaintiffs." <u>Doe v. Board of Educ. of Baltimore County</u>, 165 F.3d 260, 264 (4th Cir. 1998); <u>see also</u> <u>Prousalis v. Jamgochian</u>, 38 F. App'x. 903, 905 (4th Cir. 2002).

**D. Summary of Amount in Controversy**

The court finds that, if wholly successful, the McGowans could reasonably expect to recover actual damages of up to $40,000 and attorney fees of up to $25,000. Indeed, both sums may just as reasonably be deemed to be considerably less. Thus, the total estimated amount in controversy does not exceed $65,000, and Nissan has not carried its burden of showing by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional amount.

**IV.**

For the reasons set forth, it is accordingly ORDERED that McGowans' motion to remand be, and it hereby is, granted.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

ENTER: November 20, 2012

John T. Copenhaver, Jr.
United States District Judge